IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES HARRIS; RICK KETCHAM; and
ADAM MANSKE, Each Individually
and on Behalf of Others Similarly Situated        PLAINTIFFS

V.                        Case No. 5:16-CV-05033

EXPRESS COURIER INTERNATIONAL, INC.               DEFENDANT

MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Conditional Certification of Collective Action, for Disclosure of Potential Opt-in Plaintiffs' Contact Information, and to Send Court-approved Notices (Doc. 24) and Brief in Support (Doc. 25); Defendant's Response in Opposition (Doc. 30) and Brief in Support (Doc. 31); and Plaintiffs' Reply (Doc. 32). The Court held a hearing on Plaintiffs' Motion for Conditional Certification on July 14, 2016, with counsel and representatives from the parties present for oral argument on the Motion. As explained in further detail in this Order, Plaintiffs' Motion (Doc. 30) is **GRANTED**.

I. BACKGROUND

Plaintiffs James Harris, Rick Ketcham, and Aaron Manske, on behalf of themselves and others similarly situated, move the Court for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The FLSA is a federal statute governing minimum wages, maximum hours worked, and overtime compensation. The statute allows an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of lawsuit requires that each potential plaintiff "opt in," or "give

1

his consent in writing to become such a party" to a collective claim for unpaid wages. *Id.*

Plaintiffs are former drivers/couriers of Defendant Express Courier International, Inc., doing business as LSO Final Mile ("LSO"). LSO is a company that facilitates the delivery of products for the medical, financial, and retail industries, through the work of drivers/couriers who actually perform these deliveries. LSO offers same-day, on-demand, and scheduled delivery services in ten different states. According to Plaintiffs, LSO has misclassified its drivers/couriers as independent contractors, when they really should be classified and paid as employees, and LSO has failed to pay their drivers/couriers overtime compensation for all hours worked over 40 per week. Plaintiffs ask the Court to conditionally certify the following FLSA class:

> **Each individual who (a) worked for Express Courier International, Inc. ("Express"), as a driver, courier, or owner-operator any time after February 11, 2013, (b) never subcontracted any of his or her work for Express, and (c) contracted directly with Express under Express's standard "Owner-Operator Agreement."**

In the Motion, Plaintiffs argue that they share with their fellow LSO drivers/couriers the following characteristics: (1) they were uniformly classified by LSO as independent contractors and were not paid overtime compensation; (2) they were required to sign the same "Owner-Operator Agreement"—which states that drivers/couriers are considered independent contractors—before they were permitted to make deliveries for the company; (3) they were subject to the same corporate-level policies, procedures, and training programs; (4) they were subject to a common policy of local control; and (5) they were subject to common policies regarding pay.[1] According to Plaintiffs, LSO's "common

---

[1] LSO's counsel agreed during the Rule 16 case management hearing held on May 19, 2016, that drivers/couriers are generally paid on a per-stop basis, but that some individuals

2

policies" include: (1) requiring all drivers/couriers to use communication equipment compatible with LSO's operating system, (2) testing drivers/carriers randomly for drugs and alcohol, (3) requiring drivers/couriers to obtain written permission from LSO before driving for other carriers, (4) requiring drivers to wear photo ID badges and follow a dress code, (5) checking drivers'/couriers' motor vehicle reports annually, (6) requiring drivers to keep their vehicles clean, and (7) requiring drivers to cede any authority they might have otherwise had to LSO to investigate any delays, shortages, misdeliveries, and claims related to lost, damaged, or contaminated loads.

For its part, LSO denies that it has wrongly classified its drivers/couriers at its locations, as LSO believes they are independent contractors, not employees. Further, LSO contends that its drivers/couriers are not similarly situated to one another, such that it would be inefficient and inappropriate to group them into a single class for collective action purposes. LSO points out that drivers/couriers possess "a kaleidoscope of differences . . . that are not capable of resolution in a 'one size fits all' basis." (Doc. 31, p. 7). LSO also believes that if the Court conditionally certified Plaintiff's proposed class, the Court would be required to engage in an individualized analysis of each class member's case. This is because, according to LSO, its drivers/couriers differ as to: (1) how they are compensated, depending on the customer/route and difficulty/sensitivity of the work, (2) whether they

---

have negotiated with LSO to receive a different payment plan, usually in the case in which the driver is responsible for making regular stops on a predetermined route. *See* Hearing Transcript, Doc. 26, p. 31. In such a situation, a driver may have negotiated payment for the entire multi-stop route, rather than for each stop on the route. Otherwise, however, LSO's counsel believes that drivers/couriers nationwide are paid per stop. These per-stop payments are intended to cover all costs involved in vehicle maintenance and gas purchases, regardless of the fact that the vehicles used by the drivers/couriers to make their deliveries vary widely. *Id.* at p. 34.

have successfully negotiated their own compensation plans with the company or not, (3) whether they personally perform deliveries or hire others to do so for them, (4) whether they incorporate or operate as sole proprietorships, (5) which type of vehicles they drive and whether they invest in equipment for their vehicles, and (6) the degree of interaction they have with LSO management. In addition, LSO points out that all drivers/couriers decide for themselves when they will work, what deliveries they will make, and what sorts of customers they will have.

LSO devotes significant attention in its briefing to explaining how its delivery operations function from location to location. It explains, for example, that a driver performing delivery services in Paducah, Kentucky, would arrive at an LSO warehouse staffed by LSO employees and would operate a cargo van to deliver products during a set delivery window to hospitals and drug stores. By contrast, a driver in Greenville, South Carolina, would arrive at a secure building that is not staffed by LSO employees and would input a code to gain access to the building. The Greenville driver would then load the deliveries onto whatever vehicle he felt was appropriate, and then contact each customer to schedule the delivery time. *See* Doc. 31, p. 12.

LSO also points out that it would be very difficult to calculate classwide damages without receiving individual testimony from each driver/courier, as some individuals work part-time, while others work full-time, and they each maintain their own records of how many hours they have driven for the company. Moreover, LSO disagrees that it provides any standardized training to its drivers/couriers, or that it imposes a uniform dress code on drivers/couriers nationwide. LSO's final argument is that many of its company policies applicable to drivers/couriers are only in place to meet governmental regulations regarding

motor carrier safety (for example, the random drug and alcohol screenings and the motor vehicle report checks).  Therefore, LSO maintains that these cannot be considered true "company policies" for purposes of evaluating whether potential class members are similarly situated.

## II. LEGAL STANDARD

The Eighth Circuit has not yet announced standards that district courts must use in evaluating collective actions pursuant to the FLSA.  *Resendiz-Ramirez v. P&H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007).  In the absence of such guidance, numerous district courts in this Circuit, including this Court, have approved of the procedures announced in the Fifth Circuit case of *Mooney v. Aramco Services Co.*, which establishes a two-step process for certifying a collective action.  4 F.3d 1207, 1212 (5th Cir. 1995) *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Aaron v. Summit Health and Rehab., LLC*, 2014 WL 1095829, at *2 (W.D. Ark. Mar. 19, 2014) (citing *Mooney* for the prevailing approach used by federal courts in certifying collective actions); *Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. Mar. 27, 2013) (same); *Shackleford v. Cargill Meat Solutions Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same); *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009) (same).

The two-step process described in *Mooney* involves a progressively more rigorous analysis as to whether a putative class of plaintiffs is "similarly situated," as described in § 216(b) of the FLSA, and thus suited for the collective action model as a means of efficiently litigating their claims.  *Mooney* labels the first step in the inquiry as the "notice

stage" and the second step as the "decertification stage," as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

54 F.3d at 1213-14.

Plaintiff's Motion for Conditional Certification now comes before the Court at the preliminary "notice stage." Accordingly, the Court is tasked with the job of identifying whether, prior to taking discovery in the case and after considering only the pleadings and affidavits, conditional certification of a class of similarly situated employees is appropriate.

Courts have acknowledged that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ." *Id.* At the notice stage, a plaintiff must only make "a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law." *Garrison*, 2013 WL 1247649, at *2. While the burden of proof borne by the plaintiffs at this stage is relatively low, "some identifiable facts or legal nexus must bind the claims so that

6

hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

The inquiry is made somewhat complicated by the fact that the term "similarly situated" is not defined in the FLSA. District courts in this Circuit have therefore considered a variety of factors—no single one of which is dispositive—in determining whether plaintiffs and proposed class members are similarly situated at the notice stage, including: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir.1996)).

## III. DISCUSSION

Having reviewed Plaintiffs' Motion in light of the relevant standards and applicable factors, the Court finds that they have met their burden of demonstrating they are similarly situated to a potential class of drivers/couriers working for LSO. Although drivers/couriers may differ in working part-time instead of full-time, or choosing to drive energy-efficient Priuses over gas-guzzling box trucks, they all share a number of similarities. They hold the same job title, work for LSO locations throughout the Southeast, work under the same policies and practices enforced by the company, and are or were subject to the same

7

alleged violations of law during the same period of time. LSO drivers/couriers are generally paid on a per-stop basis, regardless of individual gas or vehicle-maintenance expenses, and all must sign the same contract agreeing they are independent contractors. They are considered and treated by LSO as independent contractors for purposes of determining wages and overtime compensation, and they all perform essentially the same job, *i.e.*, picking up products from warehouses/secure storage locations and delivering them by vehicle to customers.

In response to LSO's argument that drivers/couriers are properly classified as independent contractors and not employees, Plaintiffs respond that, for purposes of conditional certification, they need not prove the merits of their FLSA claims at this time. The Court agrees that requiring Plaintiffs at the certification stage to prove that they were misclassified as independent contractors according to the "economic realities" test—which LSO explained extensively in its briefing—prematurely delves into the merits of Plaintiffs' claims. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) (observing that during the initial "notice stage," when less information is before the court, plaintiffs need only demonstrate a "factual basis," a "colorable basis," or "substantial allegations" to show that they and potential collective-action members were subject to a company-wide decision, plan, or policy that violated the FLSA). Whether or not LSO actually violated the FLSA by improperly misclassifying its drivers/couriers is a subject that must be left for summary judgment or trial. Discovery could also help determine whether the practices and policies employed at LSO's 56 locations vary to such a degree that reducing the size and boundaries of the class or decertifying the class altogether might be warranted at some point in the future.

Turning now to the question of whether Plaintiffs have sufficiently demonstrated that there are drivers/couriers interested in joining the litigation in significant numbers, such as to justify a collective action rather than several individual actions, the Court observes that other district courts in the Eighth Circuit and elsewhere are split as to whether plaintiffs must affirmatively demonstrate such interest. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4–5 (E.D. Ark. Dec. 15, 2009) (collecting cases). The Court will not decide the issue one way or the other at this time, but will simply observe that if Plaintiffs were required at the notice stage to produce some evidence that others wished to join the class, Plaintiff James Harris's affidavit (Doc. 24-10) satisfies that burden. In his affidavit, he identifies eight drivers/couriers by name who worked with him at the Springdale, Arkansas branch of LSO and were subject to the same company policies and method of pay. Further, LSO's counsel stated during the case management hearing that there are approximately 4,000 to 5,000 LSO drivers/couriers spread throughout the company, all of whom worked for LSO during the three-year class period. *See* Doc. 26, p. 31. If even a fraction of these thousands of drivers/couriers are interested in opting into a collective action, this number would favor utilizing a collective-action model over several individual lawsuits.

Finally, with respect to the issue of whether damages in this case may be too fact-intensive and individualized to allow for straightforward calculation on a class-wide basis, the Court finds that it need not resolve this issue at the conditional-certification stage. In general, the calculation of damages should not be considered in the same context as the Court's decision on whether to exercise its discretionary authority to issue notice to a proposed class. Even though damages may be difficult to calculate, there remains the

9

possibility that they may be approximated or determined by some standardized measure. *See, e.g., Lopez v. Tyson Foods*, 2008 WL 3485289, at *10 (D. Neb. Aug. 7, 2008); *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 196 (S.D.N.Y. 1985) ("It is well established that individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit.").

## IV. CONCLUSION

In light of the findings of the Court set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification of Collective Action, for Disclosure of Potential Opt-in Plaintiffs' Contact Information, and to Send Court-approved Notices (Doc. 24) is **GRANTED** as follows:

(1) A class, as defined in this Order, is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2) The proposed notice for mailing (Doc. 24-1), consent to join for mailing (Doc. 24-2), notice for emailing (Doc. 24-3), consent to join for emailing (Doc. 24-4), and follow-up postcard (Doc. 24-5) are all approved as to form and content, and Plaintiffs are granted leave to send the above documents to each putative class member in the manner contemplated by the Motion (Doc. 24).

(3) Defendant is ordered to produce to Plaintiffs' counsel within 21 days of the entry of this Order, in an electronically manipulable format, the names, last known mailing addresses, and any and all known email addresses associated with all those individuals who worked for Express Courier

International, Inc./LSO Final Mile as drivers, couriers, or owner-operators any time after February 11, 2013; never subcontracted any of their work for Express/LSO; and contracted during the relevant time period directly with Express/LSO under the company's standard "Owner-Operator Agreement."

**IT IS FURTHER ORDERED** that the opt-in period shall last for a period of 90 days, to begin three days after the date Defendant produces the names and contact information for the putative class members.

**IT IS FURTHER ORDERED** that Defendant is not required to send notices, consent forms, or copies of the most recent complaint to any company-sponsored email addresses used by drivers/couriers, as proposed by Plaintiffs in their Motion. *See* Doc. 24, ¶ J.

**IT IS FURTHER ORDERED** that a Case Management Order will be issued separately, which will set forth a briefing schedule for both decertification of the collective action and certification of a proposed Rule 23 class.

**IT IS SO ORDERED** on this 19th day of September, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE