IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES HARRIS; RICK KETCHAM;
and ADAM MANSKE                                                    PLAINTIFFS

V.                          CASE NO. 5:16-CV-05033

EXPRESS COURIER INTERNATIONAL, INC.,
n/k/a LSO FINAL MILE                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant Express Courier International, Inc., n/k/a LSO Final Mile's ("LSO") Motion for Summary Judgment (Doc. 138), Brief in Support (Doc. 139), and Statement of Facts (Doc. 140); Plaintiffs James Harris's, Rick Ketcham's, and Adam Manske's Response in Opposition (Doc. 143) and Statement of Facts in Support of Response (Doc. 144); LSO's Reply (Doc. 150); and Plaintiffs' Sur-Reply (Doc. 155). The Motion is fully briefed and ripe for resolution. After careful consideration of the briefing and the exhibits submitted in support, the Court **DENIES** the Motion for the reasons explained herein.

## I. BACKGROUND

Plaintiffs are three former couriers who worked for LSO, a company that facilitates the delivery of products for the medical, financial, and retail industries through the work of couriers who actually perform these deliveries. LSO offers same-day, on-demand, and scheduled delivery services. LSO does not operate cars or delivery trucks needed to complete the deliveries; instead, the couriers provide their own transportation, pick up the items to be delivered, and report to LSO to coordinate and confirm the deliveries. In Plaintiffs' view, LSO misclassified them as independent contractors, when they really

should have been classified and paid as employees. They contend that LSO failed to pay them minimum wages and overtime compensation for all hours they worked over forty per week.

In LSO's view, Plaintiffs, like all couriers who worked for LSO, signed Owner-Operator Agreements that placed them on notice that the company would consider them—and pay them—as independent contractors. When the lawsuit was originally filed, Plaintiffs lodged minimum-wage and overtime claims on behalf of themselves and a nationwide class of similarly-situated drivers working for LSO. The Court conditionally certified a nationwide Fair Labor Standards Act ("FLSA") collective action on September 19, 2016. Then, Plaintiffs moved under Federal Rule of Civil Procedure 23 to certify a separate class composed of LSO couriers who worked in Arkansas and allegedly suffered wage and hour violations under the Arkansas Minimum Wage Act ("AMWA") due to LSO's alleged misclassification scheme. After extensive briefing on the pending motions, followed by an in-court hearing, the Court decertified the FLSA collective action and denied Plaintiffs' motion to certify a Rule 23 class in an Order entered on November 21, 2017. See Doc. 130. After that, the only claims left in the case were the individual ones asserted by the three named Plaintiffs.

LSO's Motion for Summary Judgment assumes for the purposes of the Motion only that Plaintiffs can successfully prove they were misclassified as independent contractors. The Motion argues that the case should nonetheless be dismissed because the Plaintiffs have failed to produce any documents that show the number of hours they worked, the deliveries they completed, or the expenses they incurred in making deliveries. Without this information, LSO contends it would be impossible for Plaintiffs to prove at trial that

2

they were not paid a minimum hourly wage. LSO further claims that Plaintiffs did not disclose any computation of damages for each category of damages claimed, and the estimates they provided as to the number of hours they worked were either contradictory or else did not establish that they worked in excess of forty hours in a given week, such that they could not prove at trial that they were entitled to overtime compensation.

Specifically as to Plaintiff Ketcham, LSO points out that the only way he could prove to a jury what deliveries he made on a given day is by testifying about *each and every day* he worked, since he admits he possesses no documents to prove his work schedule, and he admits that his particular delivery schedule often varied by the day. As to Plaintiff Manske, LSO maintains that he has offered contradictory estimates under oath about the number of hours he worked. During his deposition, he stated at one point that he worked an average of 70 hours per week, and at another point, he estimated that he worked 72-96 hours per week. LSO finds these two statements to be so inconsistent that they are patently unreasonable. In addition, LSO notes that Manske kept no records about his mileage or gas, which, to LSO, means that Manske could not establish at trial that he was paid less than the minimum wage for his services. Finally, as to Plaintiff Harris, LSO observes that he testified in his deposition that he kept a spreadsheet with a calculation of his damages, but he never produced the spreadsheet to LSO. Harris also testified that the volume of his work varied by the day and by the season, and that his expenses varied depending on the number of miles he drove and the vehicle he used. All of this signals to LSO that Harris could not plausibly estimate for a jury the number of miles he drove and hours he worked for the company.

LSO also complains that Plaintiffs supplied it with a "damages model," (Doc. 138, pp. 139-150), on August 20, 2018, just four days before the Court's deadline for submitting dispositive motions. This model was prepared by Plaintiffs' counsel, not by a retained expert. According to LSO, the model's calculations contradict the three Plaintiffs' sworn testimony and their responses to written discovery. In essence, LSO complains that the damages model consists of assumptions about how many hours each Plaintiff worked, but those assumptions are either unsupported by any tangible evidence or else are contradicted by the Plaintiffs' own deposition testimony and/or their responses to written discovery.

Plaintiffs dispute all of LSO's arguments and assert that they do, in fact, have documentation to support their estimates of hours, mileage, and other expenses. Plaintiffs note that they provided their tax records to LSO, and those records reflect the business mileage they claimed each taxable year. They also claim they responded to LSO's written discovery requests with reasonable estimates of the number of miles they drove and the number of hours they worked. In addition, Plaintiffs point out that LSO produced "Driver Daily Summaries," which provide some evidence of the deliveries they made, how much LSO paid them, and how many miles they drove to make these deliveries. Finally, Plaintiffs argue that LSO's characterization of their deposition testimony is "intentionally misleading" because it omits other aspects of their testimony. See Doc. 143, p. 8. Below, the Court will consider the parties' dueling arguments on summary judgment, beginning with the appropriate legal standard that must be applied when ruling on the Motion.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

The sole issue on summary judgment is whether the Plaintiffs have marshaled enough evidence to present to a jury to create a genuine, material question of fact as to whether each Plaintiff was entitled to minimum wage compensation and/or overtime

compensation under the FLSA and AMWA,[1] based on the number of hours they worked per week, the wages they were paid, and the expenses they incurred to offset their wages. LSO has not raised on summary judgment the threshold issue of whether LSO improperly classified the Plaintiffs as independent contractors. Instead, for purposes of summary judgment only, LSO has assumed that Plaintiffs were misclassified. Therefore, the briefing centers only around the quantum of proof that exists to demonstrate a material issue of fact as to LSO's liability on both the overtime and minimum-wage claims. It follows that if Plaintiffs are able to present proof sufficient to raise a genuine, material dispute of fact that LSO failed to pay them appropriate overtime compensation and/or minimum wages, then summary judgment must be denied, and the matter must proceed to a jury.

Essentially, the parties disagree about the *type* and *quality* of proof that Plaintiffs must present on summary judgment to demonstrate the number of hours they contend they worked, the amounts they contend they were paid, and the expenses they contend they incurred in the course of employment. The FLSA requires employers to "make, keep and preserve such records of the persons employed by him and of wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator [of the Department of Labor's Wage and Hour Division] as he shall prescribe by regulation or order . . . ." 29 U.S.C. § 211(c). However, "[w]here an employer

---

[1] The FLSA and AMWA have similar provisions regarding minimum-wage and overtime compensation, such that for purposes of the analysis below, the Court will only refer to the FLSA. *See* Doc. 130, p. 15 ("The AMWA's minimum-wage and overtime rules predicate recovery on a worker being classified as an 'employee'—and the AMWA's definition of 'employee' is exactly the same as the FLSA's. *Compare* Ark. Code Ann. § 11-4-203(3) *to* 29 U.S.C. § 203(e)(1).").

has not kept adequate records of wages and hours, its employees cannot be penalized by being denied a recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved. Rather, the employees are to be awarded compensation on the most accurate basis possible." *Dole v. Alamo Found.*, 915 F.2d 349, 351 (8th Cir.1990) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687– 88 (1946)). "[O]nce the plaintiff has produced evidence of uncompensated labor[,] "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687-88.

In sum, a plaintiff who clams an entitlement to overtime and/or minimum-wage compensation must meet a more relaxed evidentiary burden than would be required in other legal contexts in order to establish his employer's liability. Under this relaxed burden, "once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013) (quoting *Mt. Clemens*, 328 U.S. at 687).

Meeting this relaxed standard surely requires some quantum of evidence, though it is not clear to the Court exactly how much LSO contends would be enough for Plaintiffs to survive summary judgment. However, it goes without saying that if the matter did go to trial, the jury would be tasked with evaluating the Plaintiffs' credibility in estimating their hours worked and expenses incurred. To illustrate these questions, the Court has

reviewed the Eighth Circuit's opinion in *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1060 (8th Cir. 2014), in which a district court's decision to dismiss a claim for overtime compensation on summary judgment was affirmed. In that case, the employee "failed to meet even the relaxed evidentiary standard because he failed to put forward *any* evidence of the amount and extent of his work in excess of forty hours a week for any week worked for Stratasys, let alone evidence of excess hours worked every week of his employment." (emphasis added). Instead, the employee merely "put forth contradictory and bare assertions of his overtime hours worked" by variously "estimat[ing] his work hours as between forty-five and seventy hours a week, yet . . . fail[ing] to specifically account for the hours worked." *Id.* at 1059-60. The *Holaway* Court also noted that the plaintiff was unsuccessful in meeting even a relaxed evidentiary burden because he "failed to put forth *any* evidence regarding specific weeks where he worked beyond forty hours" and had also "failed to provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment." *Id.* at 1060 (emphasis added). Instead, he "provided only vague testimony and failed to reference specific days and hours worked." *Id.*

With all that said, the Court will now turn to the specific evidence that the three Plaintiffs in this case have offered in support of their claim of liability against their former employer. In consideration of the relaxed evidentiary burden that operates in cases such as these, the Plaintiffs must each provide proof to show the amount and extent of the work he performed "as a matter of just and reasonable inference"; and then, if the Plaintiff is successful, the burden of production will shift to LSO to refute the reasonableness of the inference.

8

## A. James Harris

Harris worked out of LSO's Springdale, Arkansas facility (as did Ketcham and Manske) and delivered items such as pharmaceutical products and office supplies. Harris testified that he would start each day by pulling his vehicle up to the dock door of the LSO warehouse between 6:00 and 6:30 a.m. He would then sign the sign-in sheet. Next, he would sort, scan, and load his packages into his vehicle before leaving the warehouse at around 8:45 a.m. He would take lunch at around 2:30 or 3:00 p.m. before returning to the warehouse. He rarely finished his pharmaceutical product deliveries before 11:00 a.m. Then he would deliver office products and U.S. Post Office deliveries throughout the afternoon and into the evening. He estimates that he worked past dark many times, especially in November and December. At the end of each work day, he would return to the warehouse to unload items. There might be anywhere from 100 to 300 packages to return to the warehouse at a time at the end of the day.

As for the number of days he worked per week, Harris testified that he worked five days a week, at an average of fifty-five hours per week. In addition, he testified that he could only remember three occasions when he took time off work. Harris's First Supplemental Answers and Objections to LSO's Interrogatories confirm his estimate that he worked a normal five-day week for approximately fifty-five hours each week. See Doc. 138, p. 47. He also estimates that he drove 152 miles per day in 2014 and 192 miles per day in 2015. He believes these figures are consistent with the total mileage he claimed in tax year 2014. Thus, he calculates his mileage expenses for each year using these mileage estimates, multiplied by the applicable IRS Mileage Rate as a baseline.[2]

---

[2] LSO argues in its Motion that it is not reasonable for Plaintiffs to use the IRS Mileage Rate to calculate their expenses. See Doc. 139, p. 12. Plaintiffs agree that using the IRS

LSO has produced documents called "Driver Daily Summaries" which list the packages each driver delivered and the amounts LSO paid them per day. LSO and the Plaintiffs acknowledge that, although the Driver Daily Summaries are not 100% accurate, they provide the only documentation available for purposes of calculating how much Plaintiffs were paid per week. For example, Harris has multiplied his estimated mileage by the IRS Mileage Rate and then subtracted that total from his weekly pay, which he calculates using the Driver Daily Summaries. He then uses this figure to determine the amount of unpaid minimum wages he now claims he is owed. His contention is that, once his expenses for mileage are subtracted from his weekly pay, he will be able to demonstrate to the jury that he did not earn at least the minimum wage for several weeks he worked for LSO. Likewise, in his claim for overtime compensation, he estimates that he worked approximately 11 hours per day for LSO, and he calculates the number of hours worked per week by cross-referencing LSO's Driver Daily Summaries. Harris identifies several work weeks in which he maintains he worked in excess of forty hours per week. Specifically, he contends that on a number of occasions, he worked fifty-five hours per week or forty-four hours per week.

The Court finds that Harris's evidence is sufficient to establish "as a matter of just and reasonable inference" a genuine, material dispute of fact as to LSO's liability for overtime and minimum wage violations under the FLSA. LSO has not submitted sufficient proof to refute Harris's estimates for purposes of summary judgment. For these reasons, summary judgment will be denied as to Harris, and the matter of LSO's liability will be

---

Mileage Rate is not the only possible way to estimate costs, but they submit it is one reasonable way to do so. The Court finds this issue to be inappropriate to resolve on summary judgment, as it appears to go to the calculation of damages and not to the issue of liability.

submitted to a jury.

## B. Rick Ketcham

Ketcham testified that he typically worked for LSO from 6:00 a.m. to 2:00 p.m., five days per week, unless LSO gave him extra work. He further testified that he received additional work approximately three or four days per week. Also, approximately once a week, he delivered computer parts to customers in Branson, Missouri and in Wyandotte, Oklahoma. He therefore estimates that on several occasions he worked a total of fifty hours per week for LSO.

As for mileage, he estimates he drove 160 miles per day, which is a figure he believes is consistent with the total mileage he claimed for tax years 2014 and 2015. His driving route would usually take him from the LSO warehouse in Springdale, to the towns of Berryville and Eureka Springs, Arkansas, and then back to the warehouse in Springdale. He, too, used the IRS Mileage Rate to calculate his damages. Like Harris, he relied on LSO's Driver Daily Summaries to establish how much LSO paid him per week for his work.

The Court finds that Ketcham's evidence showing the amount and extent of the work he performed for LSO is sufficient to establish "as a matter of just and reasonable inference" a genuine, material dispute of fact as to LSO's liability for overtime and minimum wage violations under the FLSA. LSO has not submitted sufficient proof to refute Ketcham's estimates for purposes of summary judgment. For these reasons, summary judgment will be denied as to Ketcham, and the matter of LSO's liability will be submitted to a jury.

## C. Adam Manske

During his tenure at LSO, Manske transported office products and pharmaceuticals from LSO's Springdale warehouse to various places in Arkansas. He would arrive every day at 6:00 a.m. to unload the truck and sort his deliveries. Then he would load his vehicle and leave the warehouse at around 9:00 a.m. to make his deliveries, beginning with the pharmaceuticals. He would return to the warehouse at around 10:30 a.m. to sort and load office supplies for further deliveries. He would deliver these office supplies to towns such as Eureka Springs and Rogers, Arkansas, and then he would return to the warehouse to submit paperwork and demonstrate that his van was empty. He would finish work between 5:00 p.m. and 8:00 p.m., except in some cases when he finished early. He testified that the earliest he ever finished work was at 3:00 p.m. on a single occasion. He typically worked Monday through Friday, and sometimes on Saturday at least once a month, but sometimes as many as three Saturdays per month. He estimates that at various times during his employment with LSO, on particular weeks he has identified to LSO, he worked an average of 60 hours per week, which exceeds the forty hours per week required for the payment of overtime wages.

Manske estimates he drove an average of 172 miles per day for LSO. This figure is less than the estimate he provided in his deposition, but he argues it is consistent with other documentation he possesses, namely, his tax returns for 2014 and 2015, in which he now claims he made intentionally low estimates of his mileage so that he could easily justify them were he ever audited by the IRS.

The Court finds that Manske's evidence showing the amount and extent of the work he performed for LSO is sufficient to establish "as a matter of just and reasonable

inference" a genuine, material dispute of fact as to LSO's liability for overtime and minimum wage violations under the FLSA and AMWA. LSO has not submitted sufficient proof to refute Manske's estimates for purposes of summary judgment. For these reasons, summary judgment will be denied as to Manske, and the matter of LSO's liability will be submitted to a jury.

## IV. CONCLUSION

For the reasons set forth herein, Defendant Express Courier International, Inc., n/k/a LSO Final Mile's Motion for Summary Judgment (Doc. 138) is **DENIED**.

**IT IS SO ORDERED** on this __16th__ day of November, 2018.

/s/ Timothy L. Brooks
_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE